Appellant calls our attention to Putman v. Van Allen, 46 Hun, 492. We think that case differs from the one before us. In that case the trial was before a jury, on October 1, 1885. In that case the justice did not write "Judgment" opposite the total items; and, upon the facts disclosed, it was held that his acts on the 5th of October were without authority, and that the judgment attempted to be entered on that day was clearly void, "as having been rendered, not forthwith after the verdict, * * * at a time when the justice had no right to enter a judgment." In the course of the opinion delivered by Williams, J., he said:

"This judgment appealed from was clearly void as having been rendered not forthwith after the verdict, but four days later, at a time when the justice had no right to enter any judgment."

And that judge further said, in the course of his opinion, "that no judgment was rendered or entered October 1, 1885." The case, therefore, differs essentially from the one in hand.

The principal question involved in this appeal is carefully discussed in the opinion of the learned county judge, and we are satisfied with the views he there expresses; and for the reasons therein stated, as well as upon the views we have already expressed, we are of the opinion that the action of the county court was proper.

Judgment of the county court of Lewis county affirmed, with costs. All concur.

---

(15 Misc. Rep. 359.)

### MAHER et al. v. GARRY et al.

(Supreme Court, Special Term, New York County. January, 1896.)

CONTRACTS—CONSTRUCTION—COLLATERAL ORAL AGREEMENT.

In an action to enjoin executors from rescinding an agreement between their testator and plaintiffs it appeared from the agreement that testator associated plaintiffs with him in business; that he left his capital invested, but reserved the right to withdraw it as he saw fit; that plaintiffs put in some capital, were to receive respective sums per week from the profits, and an interest in the business after testator's capital had been withdrawn; and that testator, or his executors, might rescind the agreement at any time before testator's capital was all withdrawn. The testimony showed that plaintiffs willingly relied on testator's judgment in rescinding, but objected to the power being extended to his executors: that testator thereupon agreed to annex a codicil to his will directing his executors to continue the business; that such codicil was annexed, and, later, revoked. *Held*, that plaintiffs, by giving to testator absolute power to rescind during his lifetime, left it to his judgment to prevent after his death the doing of a thing which he might do in life, and therefore the executors had authority to rescind.

Action by John Francis Maher and Patrick J. Molohan against Della Garry and others, executors of Thomas Garry, deceased, to enjoin them from rescinding a partnership agreement made between their testator and plaintiffs. Judgment for defendants.

Dill, Seymour & Kellogg, for plaintiffs.
Guggenheimer, Untermyer & Marshall, for defendants.

RUSSELL, J. This action is brought, not to reform a written contract of partnership or joint enterprise, but for injunctive relief against the executors of the deceased associate, based upon a claim of a right to continue the joint business, derived from an oral agreement collateral to and cotemporaneous with a written agreement of partnership or joint enterprise. The deceased, Thomas Garry, was the owner of a store business in Grand street, New York City, and desired to retire from active participation in it. He associates with him in the continuance of the business two of his former employés, by agreement made May 14, 1892. By the agreement he leaves in his capital, $151,327.45, which he has the right to withdraw, with interest thereon at 6 per cent. per annum, at any time he sees fit. The plaintiffs contributed $8,000 to the capital and Maher had the right to withdraw $33 per week and Molohan $18 per week, and had no further interest in the business or profits until the capital of Garry was withdrawn. By the eleventh section of the agreement, Garry, or his executors, administrators, successors, or assigns, had at any time the power to terminate, rescind, and annul the agreement, free from all claims for damages, on paying to the parties of the second part the $8,000 and interest. Garry, until his capital was repaid, was the sole owner of the business and the assets, and might at will alter any previous part of the agreement; but upon the withdrawal of the full amount of his capital the agreement should be binding on him. Upon the withdrawal of such capital Garry was to assign one-fifth of the business and assets to each of the plaintiffs; but might, by his election, continue the business for five years, with an option of another term of five years, either by general or special partnership.

The evidence in the case as to the collateral agreement shows that at the time the agreement was read to the plaintiffs, and before signing, they objected to the eleventh section, conferring the power to cancel, saying to Garry that they were willing to trust him, and sign it, but, as he was liable to die, they did not know what his executors would do, and what position they would be then placed in; but they withdrew the objection upon Garry's stating that he would add a codicil to his will directing his executors to conform to the agreement, and have the business continued, provided the plaintiffs complied with the contract. Garry died in May, 1894, having withdrawn of his capital the sum of about $78,000, and his executors had withdrawn at the time of the trial enough more to leave only about $60,000 of Garry's capital in the business. In April, 1895, the executors served upon the plaintiffs

notice that they elected to cancel and withdraw the remaining capital, and offered to pay the plaintiffs the amount of their contribution of $8,000 and interest. The plaintiffs rejected the offer, and brought this injunctive suit, claiming that during the three years of their management of the business it has been a profitable one, and that, through the force of the written agreement and the oral collateral promise, they have acquired the right to continue it so that the business may pay the remaining Garry capital with interest, and that thus they may acquire a two-fifths interest in the property, with the contingent partnership privileges set forth in detail in the written agreement. If the agreement is now rescinded the plaintiffs will only receive the capital they put in, with interest, and retain the sums concurrently paid or allowed to them for services out of the business. In that event, their loss would be the amount of profit earned by their management of their business, they being indemnified for the capital which they put in, and, to a certain amount, for their labor in the continuance of the business.

It is very apparent, both from the terms of the agreement itself and from the conversation between the parties at the time of the execution of that agreement, that the testator intended to own and control the property and business absolutely until his capital was withdrawn, and to have the power to withdraw from the arrangement and to resume possession at any time that he saw fit, without being obliged to give a legal excuse therefor, as he was trying an experiment in placing these two young men in the control of his business; an experiment from which he might wish to retire in case of unskillful management, or such a change in the business affairs at that location as might render a continuance unprofitable or hazardous. It is also apparent from the agreement and the conversation that the plaintiffs saw that they had nothing to lose, and were very willing to trust to the judgment, discretion, and good will of the testator in offering them the management of the business, by which they might within a few years acquire a very valuable interest in it. Upon this footing and understanding the parties made their written contract. In no event were the plaintiffs to have any interest in the property until, by the continuance of the business in the uncertain future, that business had freed itself from the burden of the capital which started it by the accumulated profits; and until that time should come the testator might terminate the arrangement, indemnifying the plaintiffs in sums fixed for their capital advanced and services performed. This was not only the scheme of the contract, but it was plainly and understandingly expressed in the instrument itself, so that the plaintiffs fully understood its scope and effect. To now interpose an oral agreement, made cotemporaneously with the signing, which would render the testator's rights, which were expressly provided should be carried over to his executors, ineffective, and to destroy that power of cancellation which was definitely provided for, would have the effect of nullifying the written agreement, and impairing the purpose and power which that agreement expressly stated

and conveyed. This case, therefore, does not present the situation of a general oral agreement, a part of which is, by its terms, committed to writing and signed, and the other part left unexecuted by any written document; but rather that of an agreement full and complete in all its parts, and signed by the parties, as containing the agreement.

Nor can fraud be predicated of the action of the testator or his executors by their insistence upon the legal rights fixed by that agreement. It may have surprised the plaintiffs that the testator and the executors should act as they did, and by the action of the testator in making a codicil to his will of the character he did, and then revoking it, that the executors should terminate a business alleged to be profitable. Their surprise and disappointment do not impose upon the other parties the charge of fraud, for the contingency was one which they knew might occur when they executed the agreement under the circumstances they did.

There is another view of this case which may be taken without treating the alleged agreement as an attempt to modify the legal effect of the written agreement, and which is satisfactory as reconciling the conversation with the agreement itself. The plaintiffs concededly gave to the testator the absolute power to cancel during his lifetime. The trust which they reposed in his willingness to deal justly with them was fully as great as that which they would be expected to place in him if they placed a moral reliance upon his executing a favorable provision in his will. They were willing to trust him at the same time not to exercise unjustly the power to cancel, and also to incorporate a provision in his will continuing the business. Both acts had to be performed in his lifetime; both acts were left, not only to his sense of justice, but to his possible perception of the danger of continuing a business decreasing in value or increasing in risk in times of financial distress, so that he might provide for himself, or for his estate when he could no longer supervise it, against the perils of the future. So considered, the whole transaction at the time of the signing of the instrument was consistent with the purposes and intentions of the parties, and it is the most reasonable supposition that the plaintiffs relied upon his willingness to allow the business to continue after death, if in his judgment it should likely be safe to do so, rather than upon a legal obligation to prevent after his death the doing of a thing which he might do in life, and which legal obligation was nowhere incorporated into the lengthy and expressive instrument which contained the agreement of the parties. From these views it follows that judgment must be rendered in favor of the defendants dismissing the complaint, with costs.